FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 0 7 2012

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. RACHEL JIMENEZ, | ) ) ) |
| Plaintiff-Relator, | ) ) |
| v. | ) Civil Action No. 1:12-CV-2711 |
| | ) Jury Trial Demanded |
| DR. MARGARET KOPCHICK; DR. RUSSELL BURKEN; and TOCCOA CLINIC MEDICAL ASSOCIATES, LLC; | ) FILED UNDER SEAL ) ) ) |
| Defendants. | ) ) |

WBH

## COMPLAINT

Relator Rachel Jimenez, on behalf of the United States of America, brings this action under 31 U.S.C. §§ 3729–3732 ("False Claims Act") to recover all damages, penalties, and other remedies established by the False Claims Act on behalf of the United States, and would show the following:

## JURISDICTION AND VENUE

1.      This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729, et seq.

2.      This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), 31 U.S.C. § 3732(b), and 28 U.S.C. § 1345.

3.      This court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a) in that Defendants do or transact business

in this jurisdiction and portions of the violations of the False Claims Act described herein were carried out in this district.

4.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and under 31 U.S.C. § 3732(a).

### THE PARTIES

5.      Defendant Toccoa Clinic Medical Associates, LLC (the "Clinic") is a medical group of over twenty doctors, including Dr. Margaret Kopchick and Dr. Russell Burken as the Clinic's dermatologists.

6.      The Clinic has its registered principal office address at 800 E. Doyle St., Toccoa, GA 30577-2007. The Clinic has offices at:

     a.  Toccoa Clinic: 58 Big A Rd. Toccoa, Georgia 30577.

     b.  Foothills Centre: 274 Big A Rd. Toccoa, Georgia 30577.

     c.  Lavonia Clinic: 12192 Augusta Rd. Lavonia, Georgia 30553.

     d.  Clarkesville Dermatology: 5330 Hwy 115 W Clarkesville, Georgia 30523.

     e.  Clayton Medical Associates: 30 Cotton Wood Dr. Clayton, Georgia 30525.

     f.  Demorest Pediatrics & Women's Wellness: 101 B Adams Dr. Demorest, Georgia 30535.

7.    Relator Rachel Jimenez was employed by the Clinic as a medical aesthetician, laser practitioner, and clinical research coordinator from December 5, 2005 through April 20, 2012.

8.    Relator worked directly under Dr. Kopchick and Dr. Burken at the Toccoa Clinic and Clarkesville Dermatology.

## THE MEDICARE PROGRAM

9.    Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program. The Secretary of Health and Human Services ("HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS").

10.   The Medicare program is comprised of two parts. Medicare Part A provides basic insurance for the costs of hospitalization and post-hospitalization care. 42 U.S.C. § 1395c-1395i-2 (1992). Medicare Part B is a federally subsidized, voluntary insurance program that covers the fee schedule amount for laboratory services. 42 U.S.C. §§ 1395(k), 1395(i), 1395(s).

11.   Reimbursement for Medicare claims is made by the United States through CMS. CMS, in turn, contracts with private insurance carriers to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the carriers act on behalf of CMS. 42 C.F.R. § 421.5(b).

- 3 -

12.    In order to receive Medicare funds, enrolled suppliers, including the Clinic, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the states.

13.    Among the rules and regulations which enrolled suppliers, including Defendants, agree to follow are to: (a) bill Medicare Carriers for only those covered services which are medically necessary; (b) not bill Medicare Carriers for any services or items which were not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information relating to provider costs or services; (c) not engage in any act or omission that constitutes or results in over-utilization of services; (d) be fully licensed and/or certified under the applicable state and federal laws to perform the services provided to recipients; (e) comply with state and federal statutes, policies and regulations applicable to the Medicare Program; and (f) not engage in any illegal activities related to the furnishing of services to recipients.

14.    42 C.F.R. §§ 455, *et seq.*, expressly states that a provider must certify that he is in compliance with all federal and state statutes and regulations in order to receive payment from Medicare.

15.     At all times relevant to this Complaint, the Medicare program constituted a significant source of gross patient revenue for the Clinic, Dr. Kopchick, and Dr. Burken.

## BILLING SCHEMES

*Seborrheic Keratosis*

16.     Part of Relator Jimenez's job was to laser patients for seborrheic keratosis. Seborrheic keratosis is noncancerous (benign) wart-like growths or lesions on the surface of the skin.

17.     The ICD-9-CM diagnosis code for seborrheic keratosis is 702.1. The Current Procedural Terminology ("CPT") codes for any type of destruction of seborrheic keratosis, or "destruction code," is 17110 (for destruction of up to 14 lesions) or 17111 (for destruction of 15 or more lesions). Whether the doctor removes 15 lesions or 100 lesions, CPT code 17111 should be used a single time.

18.     Dr. Kopchick instituted a rule that patients were only allowed to have 5 lesions removed per office visit (regardless of the method of removal). This results in patients, many of whom have bodies covered in lesions, having to return every two weeks to have 5 more lesions lasered off, over and over again.

19.     Dr. Kopchick and Dr. Burken submit claims to Medicare for these sessions of lesion removal under CPT code 17110, and Medicare pays the claims.

20.     By instituting this rule, Dr. Kopchick and Dr. Burken are able to circumvent the single billing of CPT code 17111, and even the 14-lesion maximum of CPT code 17110, and repeatedly bill Medicare for the same patients over and over again.

21.     On occasion, Dr. Kopchick and Dr. Burken allow patients to have up to an additional ten lesions removed, but charge them an additional $10 per lesion. In other words, the doctors are charging patients on top of their Medicare co-payments for procedures that are already covered by their Medicare plans.

22.     There is no medical reason for limiting patients to the removal of 5 lesions per visit.

23.     Nobody performs evaluations of the patients to determine if an individual patient can or should have more or fewer lesions removed on a single visit.

24.     Many patients complain about this rule (since they not only have to make return office visits, but also have to continue living with the lesions), and at least one investigated and found out that her insurance would pay for 14 per visit.

25.     Relator Jimenez was aware that she could laser up to 14 lesions per visit under the CPT code Dr. Kopchick and Dr. Burken were using. Because she did not want to get in trouble with CMS or the law, in case the patient charts were ever audited, she began writing on patient charts "Only 5 lesions per visit, per Dr. Kopchick."

26.     When Dr. Kopchick and the office manager Debbie Canady found this out,

Canady called Relator and told her to stop doing this. When Relator explained

that she did not want to get in trouble for lasering 5 lesions when she could do

14, Canady told her to keep a separate journal, but that she was not allowed to

write it on the charts anymore.

27.     Relator asked Canady to put this instruction in writing and send it to her,

but Canady refused, saying that she was "covering her ass" by not creating a

paper trail that would implicate herself as well.

*Photodynamic Therapy*

28.     Photodynamic Therapy ("PDT") is a medical treatment that uses a

photosensitizing drug (a drug that becomes activated by light exposure) and a

light source to activate the applied drug. The result is an activated oxygen

molecule that can destroy nearby cells. PDT is used for various cancers, acne,

rosacea, sun damage, psoriasis, and many other skin conditions. PDT is both

minimally invasive and minimally toxic.

29.     Relator Jimenez would perform PDT on Dr. Kopchick and Dr. Burken's

patients for actinic keratosis, diagnosis code 702.0. They would bill under

Healthcare Common Procedure Coding System "HCPCS" code J7308 for the

application of a topical drug, and CPT code 96567 for the application of the light,

the PDT procedure, and Medicare would pay the doctors under these codes.

30.    In most instances, if patients have actinic keratosis on their arms, they need treatment on both of their arms.

31.    Under the proper billing procedures, Dr. Kopchick should perform PDT on both arms and bill once under CPT code 96567 (for a single PDT procedure) and twice under J7308 (for reimbursement of the topical solution).

32.    Dr. Kopchick, however, only allows treatment of one arm per office visit, requiring the patients to come back for a second visit for the other arm so that she or Dr. Burken can bill Medicare a second time for PDT.

33.    Moreover, these patients generally require multiple PDT treatments for each arm. Thus this rule doubles the total number of visits that each patient must make, and for which the doctors can bill.

34.    Dr. Kopchick ordered Relator to inform the patients that Medicare would only pay for one arm at a time.

35.    In addition, Dr. Kopchick uses minimal amounts of the topical solution (Levulan Kerastick), resulting in less effective treatments and causing patients to make return visits for further treatment, allowing her to bill Medicare for each visit.

36.    For a two year period, between 2006 and 2009, Dr. Kopchick and Dr. Burken would bill Medicare for both the PDT treatment and under a separate CPT code for an office visit.

- 8 -

37.   It is inappropriate to bill Medicare for an office visit when a patient comes for and is billed for a PDT treatment.

38.   Dr. Kopchick and Dr. Burken continued to bill for a PDT treatment and office visit until a Levulan sales representative found out and told them to stop billing for the office visit.

39.   To Relator's knowledge, no repayments were made to Medicare for these inappropriately billed "office visits."

*Refusing to Pare Warts*

40.   For each session of lasering plantar warts, Dr. Kopchick submits claims under CPT Code 17110 (or CPT code 17000 prior to 2007) to Medicare, which pays the claims.

41.   During a meeting with all of the dermatology staff and administration, Dr. Kopchick asked Relator Jimenez how well the laser was working for destroying plantar warts. Relator explained that the laser would work much better, and the patients would need fewer treatments, if she could first pare the warts down with a scalpel.

42.   Dr. Kopchick rejected this suggestion and said Relator Jimenez was not to pare the warts down anymore, noting that Medicare did not pay enough for them to take the time to pare the wart down and that more office visits would result in more payments.

43. Dr. Kopchick refuses to allow for the necessary work to maximize effectiveness of the laser, so as to ensure that patients have to return for multiple additional treatments, for which she and Dr. Burken bill Medicare.

*Medically Unnecessary Biopsies*

44. Dr. Kopchick substantially increases the number of biopsies she performs during the periods before and after she goes on vacation, so that she can bill Medicare and pay for her vacation with the payments.

45. Relator noted that many of these biopsies were medically unnecessary, even by Dr. Kopchick's own diagnosis, including for diagnoses of seborrheic keratosis and for warts, both of which are benign.

## COUNT I

### Violation of 31 U.S.C. § 3729 – False Claims Act

46. Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

47. As set forth above, the Clinic, Dr. Kopchick, and Dr. Burken, including by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the United States Government numerous false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

- 10 -

48. As set forth above, the Clinic, Dr. Kopchick, and Dr. Burken, by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

49. As set forth above, the Clinic, Dr. Kopchick, and Dr. Burken, including by and through their agents, officers, and employees, knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

50. Due to the Clinic, Dr. Kopchick, and Dr. Burken's conduct, the Government has suffered substantial monetary damages.

51. The United States is entitled to treble damages based upon the amount of damage sustained by the United States as a result of the aforementioned violations of the False Claims Act, 31 U.S.C. §§ 3729-3733, an amount that will be proven at trial.

52. The United States is entitled to a civil penalty of between $5,500 and $11,000 as required by 31 U.S.C. § 3729(a) for each of the fraudulent claims.

- 11 -

53.  Relator is also entitled to reasonable attorney's fees and costs, pursuant to 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Relator Rachel Jimenez prays for judgment:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a civil penalty of $11,000 for each of the false claims;

(c) awarding Relator 30% of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator her litigation costs and reasonable attorney's fees; and

(e) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

Jason Marcus
Georgia Bar No. 949698
Mike Bothwell
Georgia Bar No. 069920
Julie Bracker
Georgia Bar No. 073803

BOTHWELL
BRACKER
ATTORNEYS AT LAW
304 Macy Drive
Roswell, Georgia 30076
Ph: 770-643-1606

- 12 -